UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CLAUDETTE LEWIS-PRIDE, | ) | Case No. 04 B 6663 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| CLAUDETTE LEWIS-PRIDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 04 A 02415 |
| | ) | |
| WELLS FARGO BANK, Minnesota, N.A., as Trustee, et al. | ) | |
| | ) | |
| Defendant. | ) | Judge Jacqueline P. Cox |

## MEMORANDUM OPINION

This matter involves Claudette Lewis-Pride's ("Debtor") effort to invalidate a March 19, 2001, mortgage on her home at 8523 South Cregier in Chicago, Illinois. She sought protection under Chapter 13 of the Bankruptcy Code on February 20, 2004; she filed the Adversary Complaint herein on April 28, 2004, alleging that the Cregier property is subject to a mortgage which she asserts is void. She alleged that she was suffering from Alzheimer's disease and did not know or understand that she was entering into a mortgage loan transaction in March of 2001.

### Background

The Debtor has owned the Cregier property since 1986 or 1987 according to her daughter Yohannah Watson. The Debtor married Andrew Pride in 1989, cohabiting for less than 2 years at the Cregier property. The Debtor filed for dissolution of the marriage in 1991. Even so, Andrew

Pride continued to visit the Debtor at her home.

Before 1999 the Debtor experienced good health. In 1999 she became disoriented and confused. For example, she accused someone of stealing her coat, then said that the coat was not hers. She locked herself out of her home and was seen on occasion inappropriately dressed around her neighborhood. She hit Carl Lewis, her brother, when he suggested that she see a doctor.

The family sought help for the Debtor in 2000 and arranged treatment for her at Cook County Hospital; she left.

In July 2000 she was treated at Jackson Park Hospital; she was referred to the Community Mental Health Center. It is alleged that she was suffering from dementia and Alzheimer's disease. She received medication from the Community Mental Health Center for a year and was last treated there in 2001. She is now receiving care at the University of Chicago.

During the year before the mortgage was executed, the Debtor opened 2 bank accounts at Old Kent Bank. When the mortgage in issue was executed on March 19, 2001, she opened a third account depositing in it the loan proceeds. Andrew Pride attended the closing with the Debtor. While a court order of default was entered against Andrew Pride in the dissolution case on May 16, 1991, it is not clear whether an additional judgment order of dissolution was necessary to dissolve the marriage.

On June 23, 2003, the Probate Division of the Circuit Court of Cook County found that the Debtor was mentally incapacitated and appointed her daughter as guardian.

## Discussion and Analysis

Although not addressed by the parties, this adversary proceeding is essentially a claim objection in a bankruptcy case. The Court will infer that the Debtor makes such objection pursuant

to 11 U.S.C. § 502(b)(1), which provides, "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that--(1) such claim is unenforceable against the Debtor and property of the Debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . ." 11 U.S.C. § 502(b)(1).

Under Illinois contract law, a contract is not binding if one of the parties, at the time of the agreement, was incapable of understanding the nature of the transaction upon which he was about to embark, thereby rendering assent to the terms of the contract impossible. *See Lilly v. Waggoner*, 27 Ill. 395, 1862 WL 3220, at *3 (Ill. 1862). "In a suit to rescind documents because of alleged mental incapacity of the maker or grantor, it is [the] burden of the party seeking rescission to establish the incompetency by a preponderance of the evidence." *Johnston v. Malm*, 50 Ill.App.2d 182, 200 N.E.2d 14 (Ill. App. Ct. 1964); *see also Lilly v. Waggoner*, 27 Ill. 395, 1862 WL 3220, at *4 (Ill. 1862).[1]

The trial record is devoid of evidence pertaining to the mortgage closing. Was the Debtor confused? Was she directed by Andrew Pride to sign the loan documents? Was the lender on notice by some occurrence that would indicate she was not capable of pursuing such a loan or not capable of understanding the nature of the situation? How did the loan originate? Did the Debtor seek it, or did Andrew Pride seek it?

---

[1] Wells' reference to 755 ILCS 5/11a-3 is misplaced. That provision describes the burden of proof necessary for pronouncing a person disabled at the time of the court proceeding at hand and then appointing a guardian for that person. It does not pertain to contract law generally or to the requisite capacity for assenting to a contract.

Neither side presented medical evidence of the Debtor's condition during the relevant period of time. A limited amount of medical records were admitted. They alone are insufficient to address the medical issues, because the Court cannot properly interpret them without assistance. That she was declared incompetent in June, 2003, sheds limited light on her condition on the key date of March 19, 2001. Persons of mature age are presumed to be mentally competent, *Lilly v. Waggoner*, 27 Ill. 395, 1862 WL 3220, *3 (Ill. 1862), even when they are considered elderly, *Matter of Neprozatis' Estate*, 378 N.E.2d 1345, 1348-49 (Ill. App. Ct. 1978). Where an 81-year-old widow was found incompetent one month after a questioned transaction, such adjudication did not prove her incompetency prior to the date for purposes of rescinding a home repair contract. *Neprozatis' Estate*, 378 N.E.2d at 1348-49.

The Debtor alleges that Andrew Pride defrauded her; however, Andrew Pride is not a defendant herein. He took the Debtor to one of her appointments with medical professionals. He diverted her pension checks to his address. He withdrew money from her accounts. His acts, however, cannot be imputed to the defendant for purposes of voiding this contract. *Restatement (Second) of Contracts* § 164(2) (2005).[2]

Wells Fargo presented a letter from the Debtor instructing the lender to not escrow taxes for the loan; the Debtor's daughter recognized the handwriting therein as the Debtor's. This weighs against a finding of incapacity. *Cf. Lilly v. Waggoner*, 27 Ill. 395, 1862 WL 3220, *3-*4 (Ill. 1862) (noting "lucid" intervals during which transactions other than the one in question were accomplished

---

[2] "(2) If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by one who is not a party to the transaction upon which the recipient is justified in relying, the contract is voidable by the recipient, unless the other party to the transaction in good faith and without reason to know of the misrepresentation either gives value or relies materially on the transaction."

with apparent sanity).

The Debtor has not carried her burden of proof in this case. Without medical evidence relating to the Debtor's condition in March 2001, it would be speculative to find that she was incapable of understanding the transaction entered into on March 19, 2001.

## CONCLUSION

The Court finds against the Plaintiff and in favor of the Defendant on all counts of the Complaint in this Adversary Proceeding.


Dated: June 6, 2005

ENTERED:

*Jacqueline P. Cox*

**Jacqueline P. Cox**
**United States Bankruptcy Judge**